J-S26014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO JUAN RIVERA | : | |
| | : | |
| Appellant | : | No. 1713 MDA 2024 |

Appeal from the PCRA Order Entered November 4, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003002-2018

BEFORE: LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: NOVEMBER 4, 2025**

Antonio Juan Rivera appeals from the order, entered in the Court of Common Pleas of Lancaster County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  PCRA Counsel, Daniel Bardo, Esquire, has also filed a motion to withdraw and an accompanying **Turner**/**Finley**[2] no-merit letter.  After careful review, we affirm the order denying Rivera's petition and grant Attorney Bardo's motion to withdraw.

This Court has previously set forth the facts of this case as follows:

In April 2018, Detective Michael Vance (Detective Vance) of the Lancaster County Drug Task Force received information from a confidential informant ("CI") about a large-scale movement of heroin from New York and New Jersey to Lancaster County.  The CI explained that on April 29, 2018, a woman, Xiomara Figueroa

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (en banc).

(Figueroa), would be driving to New Jersey to pick up a large quantity of heroin. The CI informed Detective Vance of the make, model, color, and license plate number of the vehicle Figueroa would be driving. Although Detective Vance was told the date of the trip, he did not know the route or time of the trip[. S]urveillance cars were placed at multiple locations along the most logical routes to and from New Jersey.

On April 30, 2018[,] at around 2:00 a.m., Detective Vance spotted the wanted vehicle with two occupants stopped at a gas station in Berks County. By pure coincidence, [] Figueroa and her sister, Kiomara Figueroa (Kiomara), had stopped to grab something to eat at the exact same intersection that Detective Vance himself had chosen for his surveillance. Detective Vance eventually conducted a stop and investigatory detention of the vehicle's occupants. . . . Detective Vance's partner, Detective Anthony Lombardo, used K-9 Officer Bear to sniff the vehicle, which revealed a positive hit. Detective Vance proceeded to search the vehicle and found a white bag in the back seat of the car, which contained 5,000 bags of heroin mixed with fentanyl. [] Figueroa and Kiomara were then taken back to the police station for questioning.

During the interview, [] Figueroa stated she was traveling back from New Jersey after "picking up something" for [Rivera]. Figueroa stated that [Rivera] . . . sent [] Figueroa to New Jersey in a rental car. The car was rented by [Rivera's] girlfriend, Haydee Gomez. [Rivera's] cousin, Genol Torres (Torres), also known as "Bossy," brought the car to [] Figueroa. Detective Vance knew Torres as a drug dealer because the Lancaster Drug Task Force had previously participated in the prosecution of Torres for drug dealing prior to the incident at hand.

[] Figueroa received the address of the New Jersey destination through a text message from [Rivera,] and she was instructed to return the car to the Turkey Hill in Landisville. [] Figueroa said she was not free to diverge from her given travel path and had received strict instructions from [Rivera] to maintain her speed, not smoke in the car, or do anything else that would cause suspicion on her trip. [Rivera] kept tabs on her through multiple text messages and phone calls throughout the trip.

As part of this arrangement, [] Figueroa was also given spending money for the trip in the amount of $200[.00] to $300.[00.] She was told there was a black bag in the glove box of the rental car,

and that it was to be exchanged for a white bag in New Jersey. As was the usual arrangement, once Figueroa arrived at the address in New Jersey, a man unfamiliar to [] Figueroa came out to the vehicle, grabbed the black bag in the glove box and placed a white bag in the backseat of the vehicle. [] Figueroa did not know the contents of the bag, but she had a suspicion it was drugs. As the field test and subsequent lab report showed, the white bag contained approximately 120 grams of heroin and fentanyl.

As the traffic stop was taking place, [] Figueroa texted [Rivera] to let him know she had been pulled over in the rental car. After "back[-]to[-]back to back[-]to[-]back" text messages from [Rivera], he eventually called her while she was being interviewed by Detective Vance at the police station. Detective Vance had [] Figueroa answer the phone call from [Rivera]. [Rivera] asked [] Figueroa, "Did they grab everything?" to which [] Figueroa responded, "Everything." At which point[, Rivera] hung up abruptly.

***Commonwealth v. Rivera***, 248 A.3d 458, at *1-*6 (Pa. Super. 2021) (Table).

On April 30, 2018, Rivera was arrested and charged with one count of possession with intent to distribute (PWID)[3] and one count of conspiracy to commit PWID.[4] At trial, Figueroa testified against Rivera and was questioned about her cooperation with the police and her own pending charges. ***See*** N.T. Jury Trial, 5/22/19, at 79-80, 93-94. Specifically, on direct examination, Figueroa testified that she had the same charges as Rivera currently pending against her and that, although she had spoken with the prosecutor numerous times in preparation for trial, she was not promised anything in exchange for

_____

[3] 35 P.S. § 780-113(a)(30).

[4] 18 Pa.C.S.A § 903(a).

her testimony. *Id.* at 79-80. On cross-examination, in regard to questions about receiving leniency for testifying against Rivera, Figueroa stated that she "would like to get off," but was "not saying [she was] going to." *Id.* at 93. She also testified that she received unsecured bail, but she did not know that was going to happen and, that if she had to, she was prepared to go back to jail. *Id.* at 94.

Following a jury trial, Rivera was found guilty of conspiracy to commit PWID, but not guilty of PWID. On August 2, 2019, the trial court sentenced Rivera to six to 30 years in prison. Rivera filed a post-sentence motion for a new trial on August 6, 2019, which was denied by operation of law on December 6, 2019.

Rivera appealed to this Court on December 10, 2019, and, ultimately, this Court affirmed his judgment of sentence. *See Commonwealth v. Rivera*, 248 A.3d 458 (Pa. Super. 2021) (Table).[5] On August 2, 2021, Rivera filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on May 24, 2022. *Id.*, 279 A.3d 31 (Pa. 2022).[6] He did not file a writ of certiorari with the United States Supreme Court.

---

[5] Rivera filed a petition for reargument, which this Court denied on March 10, 2021. *See Commonwealth v. Rivera*, 2021 Pa. Super. LEXIS 121 (Pa. Super. filed Mar. 10, 2021).

[6] Rivera initially filed his petition for allowance of appeal with our Supreme Court on April 19, 2022. However, the matter was temporarily remanded to
*(Footnote Continued Next Page)*

On March 3, 2023, Rivera filed a timely pro se PCRA petition, his first, and was appointed PCRA counsel on March 16, 2023. On May 16, 2023, PCRA counsel filed a motion to withdraw, accompanied by a **Turner**/**Finley** no-merit letter. On the same day, the PCRA court granted counsel's request to withdraw and issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. **See** PCRA Court Opinion, 1/22/25, at 7-8.

On June 8, 2023 and June 16, 2023, Rivera filed pro se responses to the PCRA court's Rule 907 Notice, including raising a new claim alleging a violation of **Brady v. Maryland**, 373 U.S. 83 (1963), arising from the Commonwealth's alleged concealment of an agreement between the Commonwealth and Figueroa. **See** Appellant's Response to Rule 907 Notice, 6/8/23, at 2. The PCRA court appointed current PCRA counsel, Daniel Bardo, Esquire, for the sole purpose of examining Rivera's **Brady** claim.

On March 13, 2024, Attorney Bardo filed an amended PCRA petition, alleging that Rivera is entitled to a new trial because the Commonwealth failed to disclose an agreement to treat Figueroa favorably in exchange for her testimony, in violation of **Brady**. The Commonwealth filed an answer to Rivera's claim and noted that, although Figueroa's file had been purged when her charges were nolle prossed, a diligent search of Rivera's file revealed no

---

the trial court to determine whether Rivera's counsel should be permitted to withdraw. Upon that decision, Rivera refiled his petition for allowance of appeal. **See** PCRA Court Opinion, 1/22/25, at 7.

indications of an agreement with Figueroa or any alleged "proffer letter." Commonwealth's Answer to Amended PCRA Petition, 4/2/24, at 2.

Upon consideration of both filings, the court scheduled a PCRA hearing on the *Brady* issue for September 23, 2024. During the hearing, the Commonwealth called the trial prosecutor, Jared Hinsey, Esquire, as a witness. Attorney Hinsey explained that he very rarely used proffer agreements and never offered to proffer anyone in this case. *See* N.T. PCRA Hearing, 9/23/24, at 6-7. Attorney Hinsey described a proffer agreement as a written, signed agreement outlining the parameters between a prosecutor and an individual facing charges, generally including a notice that the information will not be used against the individual, but that the prosecutor is promising them nothing in return for the information. *Id.* He testified that "[i]f [an individual was] cooperating, then they could choose to continue to cooperate without an agreement, or if they wanted to set up a proffer, their attorney could ask for one or they could ask for one." *Id.*

Regarding Figueroa, Attorney Hinsey testified that he did not issue a proffer agreement to Figueroa, nor did her attorney request one. Further, Attorney Hinsey explained that he met with Figueroa multiple times prior to Rivera's trial, but that he never promised her anything in exchange for her cooperation. *Id.* at 14-15. He noted that Figueroa's testimony at trial was consistent with the information she had previously shared on the night she was arrested. *Id.* at 17-18. Attorney Hinsey explained that after Figueroa testified, her charges were nolle prossed. *Id.* at 17.

- 6 -

Following the hearing, the Commonwealth and Rivera both submitted briefs on the ***Brady*** issue. On November 4, 2022, the PCRA court rejected Rivera's ***Brady*** claim, finding that he had "altogether failed to offer any tangible support for his assertion that an undisclosed proffer agreement existed between Figueroa and the Commonwealth." PCRA Court Opinion, 1/22/25, at 13. The PCRA court determined that, although Figueroa stated that she hoped for favorable treatment, she testified repeatedly that she was not offered any promises in exchange for her testimony. Her statements were supported by Attorney Hinsey's testimony that he "made it clear that he was not promising Figueroa anything for her testimony against [Rivera]." ***Id.*** Without more, Rivera's contention that an agreement existed was speculative. ***Id.*** Even assuming that an alleged undisclosed deal existed and was suppressed by the Commonwealth, the PCRA court found that no prejudice resulted because Figueroa had already provided a thorough statement to the police on the day she was pulled over that was consistent with her testimony at trial. ***Id.*** at 13-14.

Rivera filed a timely notice of appeal on November 21, 2024. Both the PCRA court and Rivera complied with the requirements of Pa.R.A.P. 1925. In his sole issue on appeal, Rivera contends that "[t]he PCRA [c]ourt erred when it denied relief because [Rivera] proved that the Commonwealth made an agreement with a cooperating co-defendant[, Figueroa,] prior to [Rivera's] trial, failed to disclose that agreement to him, and its failure to disclose that

agreement prejudiced him." Counsel's Application to Withdraw, 4/21/25, at ¶ 5; *see infra*.

On April 21, 2025, Attorney Bardo filed a petition to withdraw his appearance and attached the *Turner*/*Finley* no-merit letter that he sent to Rivera. To date, Rivera has not responded to Attorney Bardo's *Turner*/*Finley* no-merit letter or his petition to withdraw as counsel, nor has he filed a brief.

Before we consider Rivera's argument on appeal, we must review PCRA counsel's request to withdraw from representation. When PCRA counsel is of the opinion that a petitioner's appeal is without merit and seeks to withdraw,

> *Turner*/*Finley* counsel must review the case zealously [and] then submit a no-merit [] brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw. Counsel must also send to the petitioner: (1) a copy of the no-merit []brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the [immediate] right to proceed pro se or by new counsel.

*Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007) (quotation marks and citations omitted; original paragraph formatting altered). If counsel satisfies the technical requirements of *Turner*/*Finley*, then this Court must conduct its own independent review of the merits of the case. *Id.* If this Court agrees with counsel that the claims are without merit, then counsel will be permitted to withdraw. *Id.*

Here, the *Turner*/*Finley* no-merit letter[7] confirms that Attorney Bardo conducted a review of Rivera's case and included an explanation of Rivera's *Brady* claim that the Commonwealth failed to inform Rivera of an agreement between the Commonwealth and Rivera's co-defendant, Figueroa. *See Turner*/*Finley* No-Merit Letter, 4/21/25, at 6-8 (unpaginated). Ultimately, Attorney Bardo determined that Rivera's *Brady* claim was without merit and upon his review of Rivera's entire case, concluded that there were no other potentially meritorious issues. *Id.*; *see also* Counsel's Application to Withdraw, 4/21/25, at ¶ 9.

Attorney Bardo supplied Rivera with the *Turner*/*Finley* no-merit letter and a copy of the petition to withdraw.[8] *See* Counsel's Application to

---

[7] A *Turner*/*Finley* no-merit letter is the proper instrument to be filed with the trial court when counsel seeks to withdraw from PCRA representation. *See Wrecks*, 931 A.2d at 721. On appeal, PCRA counsel is required to file a *Turner*/*Finley* no-merit **brief** with this Court. *Id.* While we do not condone counsel's act of filing a *Turner*/*Finley* no-merit letter instead of the required brief with this Court, counsel's *Turner*/*Finley* no-merit letter provides this Court with a sufficient basis upon which to proceed with our review. Therefore, in this instance, we accept Attorney Bardo's *Turner*/*Finley* no-merit letter in lieu of a *Turner*/*Finley* no-merit brief. *See also Commonwealth v. Ellis*, 324 A.3d 1242, *5 n.10 (Pa. Super. 2024) (Table) (permitting review when counsel filed *Turner*/*Finley* no-merit letter instead of brief). *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential opinions of this Court, filed after May 1, 2019, may be cited for persuasive value).

[8] In addition to Attorney Bardo's averment in the withdrawal petition, Attorney Bardo states in the attached *Turner*/*Finley* no-merit letter sent to Rivera that he is asking the Superior Court to allow him to withdraw. *See Turner*/*Finley* No-Merit Letter, 4/21/25, at 8 (unpaginated). The practice of attaching to the withdrawal petition a copy of counsel's letter to an appellant ensures proper notification and relieves this Court of having to assume counsel's rightful
*(Footnote Continued Next Page)*

Withdraw, 4/2/25, at ¶ 3. In the **Turner**/**Finley** no-merit letter, Attorney Bardo advised Rivera of his right to proceed on appeal pro se or with new counsel. **See Turner**/**Finley** No-Merit Letter, 4/21/25, at 8 (unpaginated).

Upon review, we conclude that Attorney Bardo has substantially complied with the dictates of **Turner**/**Finley**. As such, we now review whether the PCRA court correctly denied Rivera's petition consisting solely of his **Brady** claim.

Our scope and standard of review of an order denying a PCRA petition is well-settled. Proper appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth v. Hickman**, 799 A.2d 136, 140 (Pa. Super. 2002) (citation

_____

burden. **See Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005). **See also Commonwealth v. Davis**, 264 A.3d 375, *6-7 (Pa. Super. 2021) (Table) (counsel's letter to client demonstrated he provided a copy of Turner/Finely no-merit brief and copy of withdrawal petition to appellant, therefore, substantially complying with **Turner**/**Finley** requirements).

- 10 -

omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (en banc).

To prove a ***Brady*** violation, an appellant must demonstrate: "(1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced. To establish prejudice, appellant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Commonwealth v. Treiber***, 121 A.3d 435, 460-61 (Pa. 2015) (citations and internal quotation marks omitted).

Regarding ***Brady*** claims involving an agreement between the Commonwealth and a witness, we have observed that "due process requires the jury to be informed of any promise or understanding that the government would extend leniency in exchange for a witness's testimony." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1131 (Pa. 2011). Indeed, "[a]ny implication, promise[,] or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility." ***Commonwealth v. Strong***, 761 A.2d 1167, 1171 (Pa. 2000). Notably, we have further explained that the promise or "understanding between the prosecution and its testifying witness need not be in the form of a signed contract or a completed, ironclad agreement in order to qualify as ***Brady*** material," ***Chmiel***, 30 A.3d at 1131, as impeachment evidence relating to "the credibility of a primary witness against the accused is critical evidence and it is material to the case whether that evidence is merely a promise or an

- 11 -

understanding between the prosecution and the witness." ***Strong***, 761 A.2d at 1175. "However, mere conjecture as to an understanding is not sufficient to establish a ***Brady*** violation." ***Chmiel***, 30 A.3d at 1131. Further, the mere existence of plea agreement implemented following trial is insufficient to prove that one existed at the time of trial. ***Commonwealth v. Smyrnes***, 154 A.3d 741, 747-48 (Pa. 2017)

Instantly, we agree with the PCRA court's determination that Rivera failed to prove that an agreement existed between the Commonwealth and Figueroa at the time of his trial. ***See*** PCRA Court Opinion, 1/22/25, at 12-14; ***see also Miller***, ***supra***. The record reflects that Figueroa testified at trial on both direct and cross-examination that, although she hoped she would receive leniency in exchange for her testimony, she was not promised anything by the Commonwealth. ***See*** N.T. Jury Trial, 5/22/19, at 79-80, 93-94. ***See Commonwealth v. Champney***, 832 A.2d 403, 412 (Pa. 2003) (witness's assumption that she will benefit from cooperating in prosecution of defendant, without more, is insufficient to establish agreement existed between witness and Commonwealth and does not trigger ***Brady*** disclosure requirements); ***see also Commonwealth v. Busanet***, 54 A.3d 35, 48 (Pa. 2012) (rejecting appellant's argument that agreement was formed merely because witness expected prosecutor, who made no promise, to drop certain charges).

While Figueroa testified at trial that she did receive unsecured bail, Attorney Hinsey testified at the PCRA hearing that all three co-defendants[9] charged at the time of Rivera's trial also received unsecured bail following their preliminary hearings. *See* PCRA Hearing, 9/23/24, at 9-10. Further, at the PCRA hearing, Attorney Hinsey testified that he did not issue a proffer letter to Figueroa nor promise her anything in exchange for her testimony. *Id.* at 12. Particularly, Attorney Hinsey noted that there was no need for a proffer agreement because "Figueroa had already provided all of that information prior to [Attorney Hinsey] receiving the phone call that this is what they had. She had no new information to give [him]." *Id.* at 16. The PCRA court credited Attorney Hinsey's testimony and found that no proffer letter or agreement existed. *See Commonwealth v. Koehler*, 36 A.3d 121, 135 (Pa. 2012) (affirming denial of collateral relief where PCRA court rejected *Brady* claim based on factual finding that no undisclosed deal existed between Commonwealth witness and prosecutor, and such factual finding was supported by record).

While we note that lack of a proffer letter does not by itself prove there was not an agreement, *Chmiel*, 30 A.3d at 1131, Rivera's remaining assertion that an agreement **must** have existed at trial because Figueroa's charges were nolle prossed after trial is unsupported by any credible evidence and,

---

[9] The three co-defendants were Figueroa, her sister, Kiomara, and Haydee Gomez. *See* PCRA Hearing, 9/23/24, at 9. Only Figueroa cooperated. *Id.* at 9-10.

therefore, insufficient to prove a *Brady* violation occurred. *See Smyrnes*, *supra*; *Chmiel*, *supra*.

In light of the foregoing, the record supports the PCRA court's denial of Rivera's petition because Rivera failed to establish the Commonwealth concealed exculpatory or impeaching evidence of an agreement between the Commonwealth and Figueroa. *See Treiber*, *supra*. Accordingly, Rivera's claim lacks merit and we grant Attorney Bardo's motion to withdraw. *See Miller*, *supra*.

Order affirmed. Motion to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/04/2025